UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Chad E. Lindgren and his Guardians Bruce and Deborah Lindgren,

Plaintiffs,

vs. MINUTE ORDER

Camphill Village Minnesota, Inc., and Andrew D. Konig, an individual,

Defendants. Civ. No. 00-2771 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 26th day of February, 2002.

## I. Introduction

On February 21, 2002, the Court heard argument on the Defendants' Motion to extend their own expert disclosure deadlines. At the time of the Hearing, the Plaintiffs, Chad E. Lindgren, and Bruce and Deborah Lindgren, appeared by Elizabeth W. Kimball, Esq., and the Defendants, Camphill Village Minnesota, Inc., and Andrew D. Konig, appeared by Kari J. Thurlow, Esq.

For reasons expressed during the course of the Hearing, and briefly summarized below, the Defendants' Motion is granted.

22

FILED FEB 26 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

opinion of an expert, and finally secured one on January 23, 2002. See, Thurlow Affidavit, at ¶¶3-4. At that time, they spoke with Dr. Charlie Lakin who, after being briefed on the case by the Defendants, decided that he would offer his expert testimony, and he generally outlined the anticipated content of his opinion. Id. at ¶4. Dr. Lakin explained, though, that he would be leaving his office soon after their telephone conversation on January 23, 2002, and would not be returning for the remainder of the week. He was, therefore, unable to sign the opinion he authorized the Defendants to disclose, and he did not finalize a fee arrangement with the Defendants at that time. Id. As such, the Defendants were unable to disclose their expert opinion, in accordance with the Federal Rules of Civil Procedure and our Scheduling Order, on January 24, 2002.

The Defendants did attempt to contact the Plaintiffs on January 24, 2002, so as to arrange for the late disclosure of Dr. Lakin's opinion. Id. at ¶¶5-6. They apparently called late in the afternoon on January 24, 2002, but Plaintiffs' counsel did not return the call until the next day. Id. At that time, Plaintiffs' counsel agreed to consider a stipulation, which would accept a late disclosure of the doctor's opinion, if the Defendants would fax that opinion to them, on that day, for their review. See, Affidavit of Elizabeth W. Kimball, at ¶¶5-6. Plaintiffs' counsel

advised that she was leaving at noon on that day, though, and would need to receive the report before that time.

The report was, apparently, not faxed until mid-afternoon on January 25, 2002, and the Plaintiffs' counsel was out of the office by that time. Id. When the Plaintiffs failed to notify the Defendants regarding their position on the late disclosure, the Defendants served the unsigned, incomplete disclosure by mail. See, Thurlow Affidavit, at ¶7. The Plaintiffs received the report on January 29, 2002, and advised the Defendants on January 30, 2002, that they would contest the admission of the expert's testimony. See, Affidavit of Elizabeth W. Kimball, at ¶9. Thereafter, the Defendants brought this Motion to extend their expert disclosure deadline.

III. Discussion

A. Standard of Review. The "good cause" standard of Rule 16(b), Federal Rules of Civil Procedure, provides the framework for our analysis of a Motion to Amend a Scheduling Order. As we have oft-noted:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party

> seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mention, therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631-32 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581 (D. Minn. 1999).[2]

Indeed "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship Co., 167 F.R.D. 75, 79 (D. Minn. 1996), quoting Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191, 1199 (N.D. Iowa 1994).

B. Legal Analysis. In this instance, the Defendants did plainly fail to serve their expert disclosure by the deadline of January 24, 2002, and Rule 16 "permits the district court * * * to impose sanctions on a party for failing to meet a deadline." Firefighters' Institute For Racial Equality v. City of St. Louis, 220

---

[2]Local Rule 16.3 serves to further reinforce the need for a party to show good cause, when seeking to extend a pretrial deadline. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

F.3d 898, 902 (8th Cir. 2000). In such an instance, Rule 16 is buttressed by the sanctions imposed by Rule 37(c), Federal Rules of Civil Procedure, which requires exclusion of an expert's opinion if disclosures are not timely made.[3] As we have previously noted, however:

> While sanctions under Rule 37(c)(1) are mandatory * * * exclusion of evidence should not apply if the offending party's failure was 'substantially justified,' or if the failure was 'harmless.'" Transclean Corp. v. Bridgewood Services, Inc., [77 F. Supp.2d 1045,] 1064 [(D. Minn. 1999)]. These exceptions to Rule 37(c)(1)'s imperative serve "to avoid unduly harsh penalties" that may result from an inflexible application of the Rule. Id., citing Rule 37(c), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1993 Amendments. In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court should consider the following four factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the mate-

---

[3]Rule 37(c) provides as follows:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

> rial to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice. See, Transclean Corp. v. Bridgewood Services, Inc., supra at 1064, citing Citizens Bank v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994); Millen v. Mayo Foundation, 170 F.R.D. 462, 465 (D. Minn. 1996); see also, Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 744 (Fed. Cir. 1997).

Transclean Corp. v. Bridgewood Service, Inc., 101 F. Supp.2d 788, 795-96 (D. Minn. 2000).

Thus, while we could exclude the opinions of Dr. Lakin, as untimely, which is the remedy the Plaintiffs would impose, we will not do so if "the failure to meet a deadline was either harmless or substantially justified." Firefighters' Institute For Racial Equality v. City of St. Louis, supra at 902. We find both situations to apply here.

First, the Defendants' failure to timely disclose Dr. Lakin's opinion is substantially justified by the late discovery responses, and executed authorizations, that were provided by the Plaintiffs. Although the Plaintiff contends that, since the Plaintiff Chad Lindgren previously lived in the Defendants' facility for about four years, they should have known about the need for an expert regarding services for individuals with autism, the fact remains that they, themselves, did not serve executed discovery responses until either late December of 2001, or early January of 2002, even though the responses were technically due in early December of

2001, and, at the latest, on December 20, 2001. Moreover, the Plaintiffs failed to submit executed medical authorizations until around that same time. Both of these failures necessarily delayed the Defendants' determination as to whether an expert was needed, and constitutes a substantial justification for the late disclosure, as well as good cause for an extension of the expert disclosure deadline.[4]

The late disclosure of Dr. Lakin's opinion is also harmless in this instance. The Defendants alerted the Plaintiffs, on January 25, 2002, at the latest, that their disclosures would not be timely. They also provided a general outline of Dr. Lakin's opinions at that time, along with his curriculum vita. Thus, the Plaintiffs have known about the general areas that Dr. Lakin would address since, at the latest, one day after the deadline for the Defendants' disclosure. Moreover, since the current deadline for discovery is February 28, 2002, which is the same day we have directed

---

[4]We think the preferred practice would have counseled the Defendants to contact the Court for assistance, given the extensive delay in obtained sworn discovery responses, and executed authorizations, but the Defendants could have well been lulled -- by the Plaintiffs' past practice of successfully obtaining extensions, implicit or explicit, from the Defendants -- into expecting that the Plaintiffs would reciprocate. Nonetheless, we find the anticipated, informal extension of the deadline to be at the marginal edge of "substantial justification," since the remaining portion of the discovery deadline would have cured any surprise Dr. Lakin's final opinion would have created.

the Defendants to serve their complete expert disclosures on the Plaintiffs, and which would not provide the Plaintiffs with sufficient time to conduct discovery as to Dr. Lakin's opinion, we are extending the discovery deadline to March 28, 2002,[5] and that will eliminate any prejudice that the Plaintiffs would otherwise experience arising from the Defendants' late disclosure, that we here allow. Accordingly, we grant the Defendants' Motion to extend their expert disclosure deadline, and direct them to serve Dr. Lakin's expert report **by no later than February 28, 2002.**

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendants' Motion to Extend the Expert Disclosure Deadline [Docket No. 13] is GRANTED.

2. That the Defendants shall serve their complete expert disclosures **by February 28, 2002.**

3. That discovery in this case, as it pertains to the opinions expressed by the Defendants' expert, Dr. Lakin, shall conclude on **March 28, 2002.**

---

[5]The non-dispositive Motion deadline is currently set for March 28, 2002, and we will not be extending that deadline any further. However, we instruct the parties to immediately draw to the Court's attention any disputes regarding the discovery of Dr. Lakin's opinions, even if such disputes arise after the nondispositive Motion deadline, so as to allow a vehicle for relief, if relief is needed.

4. That all other deadlines contained in our Scheduling Order of June 6, 2001, will remain the same, except as otherwise noted in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE