UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Chad E. Lindgren and his Guardians Bruce and Deborah Lindgren,

Plaintiffs,

vs. MINUTE ORDER

Camphill Village Minnesota, Inc., and Andrew D. Konig, an individual,

Defendants. Civ. No. 00-2771 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 4th day of March, 2002.

* * *

On February 27, 2002, the Court heard argument on the Plaintiffs' informal Motion for a Protective Order. At the time of the Hearing, the Plaintiffs, Chad E. Lindgren ("Chad"), and Bruce and Deborah Lindgren, appeared by Elizabeth W. Kimball, Esq., and the Defendants, Camphill Village Minnesota, Inc., and Andrew D. Konig, appeared by Kari J. Thurlow, Esq. For reasons expressed during the course of the Hearing, and briefly summarized below, the Plaintiffs' Motion is denied.

The Defendants noticed the deposition of Chad for 3:30 o'clock p.m., on February 27, 2002. The Plaintiffs now seek a Protective

FILED MAR 04 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Order, however, preventing the deposition of Chad at any time during this case. Specifically, they contend that there is no reason for the deposition, and that it may actually harm Chad, as he is autistic, and has, apparently, has been declared incompetent, under the guardianship of his parents. The Plaintiffs further note their election not to take any testimony from Chad, at the time of Trial, except for a videotape of his interview with the Todd County Sheriff's office, in August of 1999, which occurred immediately after the assault that is alleged in this case. Thus, they allege that the deposition is only being noticed to harass the Plaintiffs.[1]

Of course, Rule 26(c), Federal Rules of Civil Procedure, provides that a Protective Order can be granted, on a showing of good cause, when a deposition to be taken would serve to annoy, embarrass, oppress, or unduly burden the deponent. The Defendants complain, however, that the Plaintiffs have not met the burden of showing good cause for a Protective Order, and that the Motion is untimely.[2] Notably, they claim that the Plaintiffs have not

---

[1]The Plaintiffs also note that Chad is recovering from a hospitalization for ulcerative colitis, and that his medication affects him physically and mentally, thereby making a deposition "impossible for him to cope with." Plaintiffs' Memorandum in Support of Motion for a Protective Order, at 2-3.

[2]While it is true that the Plaintiffs' efforts in bringing (continued...)

presented medical evidence which shows that Chad is unable to testify at a deposition, and that there are two relevant purposes for taking Chad's deposition, including the Plaintiffs' intent to use the tape of the interview of Chad,[3] and because Chad's mother, Deborah Lindgren, may testify regarding more recent statements that Chad has made to her concerning that assault.[4] See, Deposition of Deborah L. Lindgren, at 80-81, Ex. 2 to Affidavit of Kari J. Thurlow.

The Plaintiffs have provided a letter of June 20, 2000, from Dr. Frederick Ferron, who is a psychiatrist, and who observed that in-Court testimony by Chad "would have a high likelihood of exacerbating his anxiety disorder and would not be in his best clinical interest." Ex. 1 to Affidavit of Elizabeth W. Kimball. This letter is not only highly dated, but the comparison of testimony,

(...continued)
this Motion to the Court, in a timely manner, have been far from laudable, we will consider it.

[3]Although the Plaintiffs contend that they will not use the tape for the truth of the matter asserted, but rather to show Chad's demeanor at that time, the Defendants argue that the only reason the tape would be shown is to allow the Plaintiffs to buttress their claims of an assault. Of course, since the Defendant Andrew Konig pled guilty to that assault, we are not sure whether the fact of the assault remains in controversy.

[4]In relevant part, Ms. Lindgren relates that Chad is still reliving and dwelling on the assault, as evidenced by certain conversations that she has had with Chad.

at Trial, and testimony, in the informal environs of a deposition, is extremely tenuous. In addition, the Plaintiffs provide us with an Affidavit of February 20, 2002, by Dr. Sheila Merzer, who is a licensed psychologist who has worked with Chad for a number of years. Dr. Merzer states that Chad does not reason well, that he has difficulty processing auditory information, that his answers can be manipulated by the form of a question, that he can not reliably narrate the facts of an event that occurred over two years ago, and that, although he does not lie, he can "be very confusing in reciting information because his thinking is associational rather than logical." Affidavit of Sheila Merzer, Ex. 3 to Affidavit of Elizabeth W. Kimball. She concluded that "there would be no benefit to deposing Chad and the process would probably traumatize him." Id. at ¶12. We would observe, however, that the same deficiencies in Chad's powers of reasoning, and of expressing himself, should have the same, or similar, application to Chad's comments, which were the subject of his mother's testimony.

While we understand that there may be some problems with Chad's ability to cope with a deposition, we conclude that, if the Plaintiffs are intending to offer the tape of his August of 1999 interview, in order to show his state of mind, or the testimony of any other person, in order to show how Chad is still affected by the assault, then the Defendants' interests in discovery of infor-

mation, as well as their right to due process of the law, outweigh the inconvenience to Chad, especially in a case where there has been no medical showing how a deposition could physically or mentally harm Chad. See, e.g., Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 92-93 (N.D. Tex. 1994)(concluding that, although there were concerns for the emotional stability of the plaintiff if she were forced to testify, the defendants had a right to take her deposition, as that plaintiff's assertions were the crux of the case, she had shown the ability to relate her story to other individuals in the past, and the objective medical evidence did not show that she would be irreparably harmed).

As we related, during the course of the Hearing, if the Plaintiffs elect not to place Chad's emotional distress, which assertedly arises from the alleged assault, in controversy, we see little to be gained in deposing Chad. By every appearance, however, the Plaintiffs wish to pursue such a claim, all the while denying the Defendants an opportunity to test its competency, or worth. Such an approach would be highly prejudicial and, we find, would plainly violate the Defendants' due process rights. Of course, in deciding that the deposition should proceed, we recognize that there are means readily available to minimize its potentially disruptive effect upon Chad. A deposition is an informal process and, by design, it can be unobtrusive, and

emotionally undemanding. As a result, we have charged the parties with designing safeguards which assure that the deposition process will be conversational, and non-confrontational. To that end, we have directed the parties to "meet and confer" so as to implement appropriate procedures for Chad's deposition, including, but not limited to, conducting an extremely focused deposition in the least stressful environment feasible. If the parties are unable to fashion a mechanism for the deposition to proceed, they should immediately return to this Court for guidance. As a consequence, we deny the Plaintiffs' Motion for a Protective Order.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiffs' informal Motion for a Protective Order is DENIED.

BY THE COURT:

Raymond L. Erickson

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE